Filed:  December 26, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1434

Wayne Harter, et al,

Plaintiffs - Appellees,

versus

C. D. Vernon, etc., et al,

Defendants - Appellants.


O R D E R


The Court amends its order filed November 22, 1996, as follows:

On page 2, first full paragraph, line 4 -- the period after the word "panel" is removed and replaced with a comma; the word "see" should be lower case.

For the Court - By Direction


/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WAYNE HARTER; ROBERT PAYNE,
<u>Plaintiffs-Appellees,</u>

v.

C. D. VERNON, individually and in
his official capacity as Sheriff of

No. 96-1434

Rockingham County; ROCKINGHAM
COUNTY,
<u>Defendants-Appellants,</u>

GUILFORD COUNTY,
<u>Movant.</u>

Filed: November 22, 1996

_____

**ORDER**

A member of the Court requested a poll on whether this case
should be reheard <u>en banc</u>. A majority of judges in active service
voted that it should not be reheard <u>en banc</u>.

Chief Judge Wilkinson and Judges Russell, Widener, Wilkins,
Luttig, and Williams voted for rehearing <u>en banc</u>. Judges Hall,
Murnaghan, Ervin, Niemeyer, Hamilton, Michael, and Motz voted
against rehearing <u>en banc</u>.

Judge Luttig filed an opinion dissenting from the denial of rehear-
ing <u>en banc</u>, in which Chief Judge Wilkinson and Judges Russell,
Wilkins, and Williams joined.

Entered at the direction of Judge Motz for the Court.

LUTTIG, Circuit Judge, dissenting:

Out of respect for the rule of law and principles of <u>stare decisis,</u> and in order to avoid confusion concerning the law in our circuit, we have adopted for our court a rule that one panel cannot overrule or modify a published opinion of another panel, <u>see</u>, <u>e.g.</u>, <u>Norfolk & Western Ry.</u> v. <u>Director, OWCP</u>, 5 F.3d 777, 779 (4th Cir. 1993); a modification of precedent may only be made by the full court sitting <u>en banc</u>. The necessary corollary of this rule is that in those instances in which a later opinion impermissibly attempts to modify an earlier opinion, the earlier opinion remains the controlling law in the circuit with respect to matters as to which the two opinions unquestionably conflict. Were it otherwise, willing panels, unconstrained by any sense of obligation to the principles of <u>stare decisis</u>, our own internal rules, or notions of collegiality, could run roughshod over prior precedent, effectively repealing a rule whose importance to both the rule of law and to the orderly operation of a court is beyond dispute.

Most frequently, in instances where it is believed by certain members of the court (or for that matter, members of the bar) that an opinion effectively overrules or modifies a prior opinion, it may at least reasonably be argued that it does not do so, either because the facts are sufficiently different from those of the earlier case as to render the earlier case inapposite or because the issue presented in the later case, although perhaps closely related, is actually different from that in the earlier case and does not require application of the same principle of law. In such instances, of course, it simply falls to the members of the bar, and ultimately to the court, to reconcile the two authorities in a principled way.

Because of the respect that we accord each other, it is the rare occasion when, even upon careful examination, not only is it apparent that a panel opinion is demonstrably at odds with prior caselaw, but it cannot reasonably be contended otherwise. In my judgment, <u>Harter</u> v. <u>Vernon</u>, No. 96-1434, is, because of its flagrant disregard of our recent opinion in <u>Gray</u> v. <u>Laws</u>, 51 F.3d 426 (4th Cir. 1995), such an opinion. Consequently, under our own rules, it seems to me that it (as opposed to <u>Gray</u>) cannot hereafter be regarded as controlling authority on questions of Eleventh Amendment immunity with regard to matters where the two opinions conflict.

2

The ways in which the panel opinion attempts to alter <u>Gray</u> are numerous and undeniable. Indeed, if the panel opinion is placed alongside <u>Gray</u>, it is obvious that, despite its disclaimers, the panel opinion was authored as if <u>Gray</u> had never even been written.

The panel opinion begins its analysis by boldly stating that "[t]he test [that is] employed in the Fourth Circuit for determining whether an agency or employee constitutes an arm of the state was first stated in <u>Ram Ditta</u> v. <u>Maryland Nat'l Capital Park and Planning Comm.</u>, 822 F.2d 456 (4th Cir. 1987)." Op. at 4. <u>Ram Ditta</u>, however, is no longer the test employed in this Circuit. Rather, the test in this Circuit is that laid out in <u>Gray</u>, which expressly refined <u>Ram Ditta</u> in light of the Supreme Court's recent decision in <u>Hess</u> v. <u>Port Auth. Trans-Hudson Corp.</u>, 115 S. Ct. 394 (1994).

We could not have been clearer in <u>Gray</u> that a modification of <u>Ram Ditta</u> was required by <u>Hess</u>:

> <u>Hess necessitates a modification of our analysis [in Ram Ditta]</u> for single state entities only to the extent that it must be read to introduce as one of the primary considerations the concern for state sovereignty and to formulate differently several of the other relevant considerations that we had previously enumerated.

51 F.3d at 434. In the very next sentence in <u>Gray</u>, we went on to say, referring to the previous three pages of analysis of <u>Hess</u> and our own precedent, that,

> [a]lthough the changes in our circuit's Eleventh Amendment analysis wrought by <u>Hess</u> arguably are not significant as they bear on the single state issue before us, <u>neither are they inconsequential</u>.

<u>Id</u>. (emphasis added). That we modified <u>Ram Ditta</u> cannot reasonably be contested.

Indeed, any suggestion (such as that in today's opinion) that <u>Ram Ditta</u> applied exactly the standard employed in <u>Hess</u> should have been

3

refuted by the fact that the Supreme Court itself vacated and remanded for consideration in light of <u>Hess</u> our own opinion in <u>Ristow</u> v. <u>South Carolina Ports Auth.</u>, 27 F.3d 84 (4th Cir. 1994), which had relied exclusively on <u>Ram Ditta</u>. <u>See Ristow</u> v. <u>South Carolina Ports Auth.</u>, 115 S. Ct. 567 (1994).

The modifications that <u>Gray</u> held were necessitated by <u>Hess</u> were set forth in great specificity in <u>Gray</u>. The first and principal change, of course, was that <u>Hess</u> elevated to primacy, together with the concern for the state treasury, the concern for state sovereignty, stating that these two concerns are "the Eleventh Amendment's twin reasons for being." 115 S. Ct. at 404. As we explicitly said in <u>Gray</u>,

> These two concerns, "the Eleventh Amendment's twin reasons for being," <u>id</u>. at ___, 115 S. Ct. at 404, the Court instructed, should dominate the inquiry in cases where it is difficult to discern whether a particular entity is an arm of the state.

<u>Gray</u>, 51 F.3d at 432. Today's opinion not only does not accord any particular significance to the state sovereignty factor, it effectively reads that factor out of the Eleventh Amendment analysis altogether by holding that it is not an independent factor, but merely a proxy for the other factors collectively.

In fact, in what is a most telling misstatement of <u>Hess</u>, today's opinion reads as follows:

> The [Supreme] Court found that these factors, which echo the factors articulated in <u>Ram Ditta</u>, pointed in opposite directions for purposes of determining the Eleventh Amendment immunity of the Port Authority. The <u>Hess</u> Court reasoned that when this is the case, a court must focus on "the impetus for the Eleventh Amendment: the prevention of federal court judgments that must be paid out of a State's treasury. . . . Accordingly, Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations."

4

Op. at 5-6. Significantly, what the Supreme Court actually said was
not that when the factors point in opposite directions courts should
focus on the treasury question; what it said was

> [w]hen indicators of immunity point in different directions,
> the Eleventh Amendment's twin reasons for being remain
> our prime guide. See supra at 400.

115 S. Ct. at 404. Of course, as noted, the Supreme Court had identi-
fied the "twin reasons for being" as concern for the fisc and, "[m]ore
pervasively," concern for state sovereignty. Id. at 400.

Second, although we stated in Gray that the concern for the fisc
was the most important factor, we did not hold that the impact on the
state treasury was necessarily dispositive of the inquiry. Although one
could conclude that the treasury concern was dispositive if payment
from the treasury was required, Hess did not say as much. Thus, we
said in Gray, in language that differs from that in today's opinion, in
a slight, but very important way, that,

> it appears that a determination that the state treasury will be
> liable for a particular judgment is largely, if not wholly, dis-
> positive of entitlement to Eleventh Amendment immunity
> . . . . This was essentially our holding in Bockes.

51 F.3d at 433-34 (citations omitted; emphasis added). There is noth-
ing whatsoever in Hess to support the assertion in today's opinion that
Hess "held" that "the state treasury factor [is] `dispositive.'" See Op.
at 9.

Third, we specifically held in Gray that where the state treasury
will not be affected by the judgment, whether or not immunity will
obtain

> must be determined by resort to the other relevant consider-
> ations referenced by the Court, chief among which are
> whether the suit will jeopardize "the integrity retained by
> [the] State in our federal system," and whether the state
> possesses such control over the entity claiming Eleventh

5

> Amendment immunity that it can legitimately be considered an "arm of the state."

Gray, 51 F.3d at 434 (quoting Hess, 115 S. Ct. at 400) (emphasis added). Today's opinion, in stark contrast, reads as follows:

> The state treasury factor is also significant when the state treasury will not pay the judgment. If that is the case, then "the most salient factor in Eleventh Amendment decisions" weighs against a finding of immunity. Hess, 115 S. Ct. at 404. Although in that situation, a court should consider the other Ram Ditta factors, Hess makes clear that the impact on the state treasury is generally determinative when the state will not have to pay for a judgment: . . .

Op. at 7-8. In short, the proposed opinion simply ignores altogether the nuanced analysis required in Gray. Although one can conclude that the treasury concern may be dispositive if payment from the treasury is required, see Bockes v. Fields, 999 F.2d 788, neither Hess nor Gray implied that Eleventh Amendment concerns are to be discounted and downgraded when the state treasury is not implicated. Yet this is exactly what today's opinion purports to do.

And the list of inconsistencies between today's opinion and Gray goes on.

To say, as the court today does, that we did not "articulat[e] the particulars of the Eleventh Amendment inquiry in Gray," see Op. at 6, is, as should be apparent even from the selected quotations above, simply disingenuous. The majority's view that the Gray court must not have detailed the particulars of the analysis because it remanded to the district court is a non sequitur. Gray obviously did not remand for the district court to develop the Eleventh Amendment analysis; it remanded for that court to apply our analysis in the first instance so as to determine whether the particular officials in that case were entitled to immunity.

I believe the full court is remiss for not addressing the serious breach of our own rules represented by the panel's opinion. Absent

6

clarification from us, not only do we telegraph how little respect we have for our own precedent and the centrality of stare decisis in our jurisprudence, but we also hopelessly confuse the district courts of this circuit by requiring them to apply Gray (which they are emphatically obliged to do, notwithstanding today's opinion) even in the face of arguments grounded in Harter's unmistakable attempt to "rewrite" Gray.

Because of the panel's disregard of our court's precedent in Gray, and the consequent affront to the rule of law in our circuit, I would summarily vacate the panel's decision. At the very least, however, I would rehear the case en banc so that the modifications made to Gray by today's opinion (which collectively result in a more restrictive interpretation of the Eleventh Amendment than even that in Hess) would, at a minimum, enjoy the imprimatur of legitimacy, and so that the district courts within our circuit would not be subjected to the utterly confusing directions from our court that results from today's decision. Left to stand, the bar of our court, as well as the district courts of our circuit, cannot be faulted for wondering whether the operative "rule" of the court is that a panel is bound by earlier precedent unless, through an exercise of raw judicial power, the panel decides that it will not be so bound. When, even as colleagues, we accord our own precedent so little respect, we should hardly be surprised when others do likewise.

Chief Judge Wilkinson and Judges Russell, Wilkins, and Williams join in this opinion.

7